**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JASON PYNE, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>-against-<br><br>ECHOSTAR CORPORATION,<br><br>Defendant. | Case No.: 2:25-cv-15693<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff JASON PYNE ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, as and for his Class and Collective Action Complaint against Defendant ECHOSTAR CORPORATION ("Defendant"), states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime wages, due to time shaving, (2) unpaid wages, including overtime wages, due to a miscalculation of employees' base rate of pay, (3) liquidated damages, and (4) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a et seq., and New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1 et seq., that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime wages, due to time shaving, (2) unpaid wages, including overtime wages, due to a miscalculation of employees' base rate of pay, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3. Defendant ECHOSTAR CORPORATION is an American telecommunications company, specializing in satellite communication, wireless telecommunications, and internet services. Echostar also provides multichannel video programming and mobile services through its subsidiaries: Dish Network, Boost Mobile, Sling TV, EchoStar Mobile, and Hughes Network Systems.

4. Plaintiff, putative collective members, and putative class members are current and former account executives, customer service representatives, and other similarly situated employees. Defendant required Plaintiff, putative collective members, and putative class members to clock in through an application on their desktop computers and/or work laptops rather than through a stand-alone time-keeping system. This meant that Plaintiff, putative collective members, and putative class members could not clock-in until their computers were up, running and all relevant applications opened. It was Defendant's policy for these computers and laptops to have all programs exited and to be shut down and/or locked out of Defendant's virtual private network overnight and then rebooted and/or have employees re-enter Defendant's virtual private network and have relevant programs re-opened in the morning prior to being able to clock-in. Plaintiffs and other employees could not clock in immediately upon arrival, as the process of logging in to Defendant's virtual private network and re-opening relevant applications took no less than five minutes, and frequently longer if the computer froze or was slow.

5. In addition to the above early morning unpaid boot-up/log-in time, Plaintiff, putative collective members, and putative class members would earn commissions which were not used in calculating Plaintiff, putative collective members, and putative class members base rate of pay for purposes of providing overtime compensation.

6. Plaintiff brings this wage and hour class action on behalf of himself and all similarly

situated employees, who during the applicable state and federal limitations periods up to and including the present (the "Class Period"), were similarly underpaid by Defendant in violation of protections afforded under the FLSA and the laws and regulations of the state of the following States:

1) Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;
2) Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;
3) Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;
4) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;
5) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.*, and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;
6) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;
7) Delaware: Delaware Minim Wage Law, Delaware Code Title 19-90 *et seq.*;
8) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;
9) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;
10) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A.§ 34-4 *et seq.*;
11) Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 §388-1 *et seq.*;
12) Idaho: Idaho the Minimum Wage Law 44-1501et seq., Hours Worked Act §44-1201et seq., and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;
13) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;
14) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 et seq. Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;
15) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;
16) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;
17) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;
18) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;
19) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;
20) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 et seq., and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

21) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

22) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

23) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

24) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

25) Montana: Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

26) Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq.*, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

27) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60;

28) New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

29) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

30) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

31) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

32) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

33) North Dakota: North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

34) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

35) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

36) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

37) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

38) Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

39) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, *et seq.*, and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, *et seq.*;

40) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

41) South Dakota: South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

42) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

43) Vermont: Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

44) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

45) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, et seq.; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

46) West Virginia: West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

47) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§DWD 272.01 et seq. and 274.01 *et seq.*; and

48) Wyoming: Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

7. Plaintiff PYNE further alleges, on an individual basis, pursuant to the New Jersey Law Against Discrimination ("NJLAD") and the Family Medical Leave Act ("FMLA") that Defendant discriminated and retaliated against Plaintiff for disclosing his medical condition and making a lawful and protected request for time off. Due to Defendant's unlawful actions against him, he is entitled to recover from Defendant: (1) compensatory damages, (2) punitive damages, (3) attorneys' fees and costs, and all other penalties the Court deems appropriate.

8. To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of a State's wage laws, Plaintiff further alleges that they and others similarly situated are entitled to recover from Defendant, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION, AND VENUE

9. This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over this controversy as the cause of action

arises out of Plaintiff's employment, for which he was hired by Defenant to work, and did in fact work, in Defendant's New Jersey offices.[1]

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) as Defendant's policies and practices complained of by Plaintiff herein occurred in in this district.

**PARTIES**

12. At all times relevant herein, Plaintiff was and is a resident of the State of New Jersey, Morris County.

13. At all times relevant herein, Defendant ECHOSTAR CORPORATION was and is a business corporation duly organized under and existing by virtue of the laws of the State of Nevada and having its principal place of business in Colorodo at 100 Inverness Terrace East, Englewood, Colorado 80112-5308.

---

[1] Plaintiff has personal jurisdiction to bring a Rule 23 class claims for out-of-state Plaintiffs for the reasons stated in the 3d Circuit precedent *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 374 (3d Cir. 2022), which held the following:

> If the requirements of Rule 23 are met and the court decides to certify the class, the class "acquires an independent legal status."*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013). The relevant entity for purposes of the litigation after certification is the class, not the individuals who make up the class. *See id.* Once certified, class actions "present 'a unitary, coherent claim' that moves through litigation at the named plaintiff's direction and pace." *Canaday*, 9 F.4th at 403 (quoting *Lyngaas v. Curaden AG*, 992 F.3d 412, 435 (6th Cir. 2021)). "[A]s a practical matter, a defendant litigates against only the class representative." *Lyngaas*, 992 F.3d at 435. Because of this, courts have considered absent class members in Rule 23 suits not to be "parties" for jurisdictional purposes. *See Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297, 445 U.S. App. D.C. 417 (D.C. Cir. 2020) ( "[U]nnamed class members are treated as nonparties for other purposes, including jurisdictional ones."); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020) ("For cases relying on specific jurisdiction over the defendant, minimum contacts, purposeful availment, and relation to the claim were assessed only with respect to the named plaintiffs.").
>
> The Supreme Court itself has regularly entertained nationwide classes where the plaintiff relied on specific personal jurisdiction, without taking note of any procedural defects. For instance, *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), involved a nationwide class brought in California against Wal-Mart, which was headquartered in Arkansas and incorporated in Delaware. *See* Fourth Amended Complaint at ¶¶ 14, 90, *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D. Cal. 2004), ECF No. 767. *Phillips Petroleum* involved a nationwide class action brought in Kansas against a defendant headquartered in Oklahoma and incorporated in Delaware. 472 U.S. at 799. In neither case did the Supreme Court find any jurisdictional deficiencies due to the presence of claims by absent out-of-state class members.2

*Fischer,* 42 F.4th at 374.

14. Defendant's business has branch locations throughout the United States, and permit many account executives, customer service representatives, and other similarly sitautated employees to work remotely from their homes.

15. All of Defendant's branch locations are managed by the same executive management team operating from the same headquarters, which sets standardized policies and managerial training. Further, each branch location is engaged in related activities, share common ownership, and have common business purposes.

16. The Defendant engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of the Defendant handle goods and materials produced outside of New Jersey (including computers, desks, office supplies, and other items) that have moved in interstate commerce, and the Defendant are thus employers subject to the jurisdiction of the FLSA.

17. At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, State wage laws, and any regulations thereunder. At all relevant times, the work performed by Plaintiff and Class members was directly essential to the business operated by Defendant.

18. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**NEW JERSEY FLSA COLLECTIVE ACTION ALLEGATIONS**

19. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees working as account executives, customer service representatives, and other similarly situated individuals employed by Defendant in New Jersey on or after the date that is six (6) years before the filing of

the Complaint ("FLSA Collective Plaintiffs").

20. At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have. been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and other FLSA Collectives for all hours worked, including overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to Defendant's policies of time shaving and improper overtime premium calculations for FLSA Collective Plaintiffs' wages.

21. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

**MULTISTATE - RULE 23 CLASS ALLEGATIONS**

22. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former n non-exempt employees working as account executives, customer service representatives, and other similarly situated individuals employed by Defendant in on or after the date that is six (6) years two-hundred-and-twenty-eight (228) days (pursuant to NY's Executive Order tolling during the COVID pandemic), or the relevant statutory period of each state's applicable labor law, prior to the filing of the Complaint in this case (the "Class Members").

23. All said persons, including Plaintiff, is referred to herein as the "Class." The Class

Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

24. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

25. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of: (i) failing to pay all wages, including overtime, due to time shaving caused by unpaid boot-up/log-in time; (ii) failing to pay employees at the proper overtime premium rate by failing to include all wages, including commissions, in the calculation of each employees base rate of pay.

26. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

27. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29. Defendant and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendant employed Plaintiff and Class Members within the meaning of the state wage laws;

b) What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and the Class Members;

c) At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and Class Members for their work;

d) Whether Defendant properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

e) Whether Defendant properly compensated Plaintiff and Class Members for their hourly rate and overtime rate; and

f) Whether Defendant paid Plaintiff and Class Members for the actual hours that they worked;

## STATEMENT OF FACTS

*Plaintiff PYNE's Wage And Hour Allegations*

31. On or around December 8, 2023, Plaintiff was hired to work, and has worked, as an Account Executive for Defendant. Plaintiff continues to work for Defendant through the current

date.

32. When Plaintiff first started working for Defendant until May 2023, Plaintiff was scheduled to work Saturday, Monday, Tuesday, and Wednesday from 9:20 am to 8:20 pm, or 11 hours a day for 4 days of the week, a total of 44 hours. During this time, Plaintiff was also scheduled to take an hour long lunch break unpaid.

33. From May 2023 to February 2024, Plaintiff was scheduled to work Monday through Friday from 8:50 am to 5:50 pm, or 9 hours a day for 5 days of the week, a total of 45 hours. During this time, Plaintiff was also scheduled to take an hour long lunch break unpaid.

34. February 2024 to the current time, Plaintiff has been scheduled to work Sunday to Wednesday from 8:50 am to 7:50 pm, or 11 hours a day for 4 days of the week, a total of 44 hours. During this time, Plaintiff was also scheduled to take an hour long lunch break unpaid.

35. At all relevant times, Plaintiff worked his scheduled hours and worked hours beyond those scheduled hours which, as detailed below, were not compensated by Defendant. FLSA Collective Plaintiffs and Class Members were assigned similar schedules and like Plaintiff worked hours in excess of those schedules which were not compensated by Defendant.

36. Throughout Plaintiff's employment with Defendant, Plaintiff was compensated approximately $22.00 an hour, and was compensated for commissions in accordance the commission structure laid out by Defendant. As an Account Exective, Plaintiff fielded customer calls and could earn commissions from the following: (i) sales to new customers, (ii) resolution of an issue which would otherwise result in a cancellation of services, and (iii) sale of new products to existing customers.

37. FLSA Collective Plaintiffs and Class Members received similar hourly compensation rates and were subject to the same commission policies set by Defendant.

*Wage And Hour Allegations All Class Members*

38. Throughout Plaintiff's employment with Defendant and regardless of location worked (including remote at home work), Plaintiff, FLSA Plaintiffs, and Class members performed work for which they were not compensated.

39. At all Defendant's locations, Plaintiff, FLSA Plaintiffs, and Class members were required to clock in through an application on their desktop computers rather than through a stand-alone time-keeping system. This meant they could not clock-in until (i) their computers were up and running, (ii) they had signed into Defendant's Virtual Private Network, and (iii) they had opened the computer applications needed to enage in their daily work. It was also Defendant's policy for desktop computers to be shut down and/or exited and locked overnight and then rebooted re-entered in the morning.

40. Neither Plaintiff nor other employees could clock in immediately upon arrival, as the computers needed to be restarted and/or re-entered, which took no less than five minutes, and frequently longer if the computer froze or was slow.

41. As a result of the foregoing policies, Plaintiff, FLSA Collective Plaintiffs, and Class members were time-shaved over 5 minutes each morningby being forced to perform uncompensated off-the-clock work.

42. Plaintiff, FLSA Collective Plaintiffs, and Class members were also time shaved as they were frequently required to work through their unpaid lunch breaks. At least three (3) times per week, Plaintiff's, FLSA Collective Plaintiffs', and Class members' meals are interrupted by emails, Google Chat requests, and even verbal requests from management and co-workers, which require immediate attention.

43. Plaintiff, FLSA Collective Plaintiffs, and Class members would frequently receive commissions and additional pay depending on their sales and/or retention numbers. When receiving this additional pay, which is paid out in accordance with Defendant's commission plans, Defendant fail to include these additional funds in calculating Plaintiff's, FLSA Collective Plaintiffs', and Class members' overtime rates.

44. Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class members for all hours worked, in violation of the FLSA and state wage laws

45. Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class members at the proper overtime premium rate for all hours worked, in violation of the FLSA and state wage laws

*Retaliation of Defendant Against Plaintiff*

46. Plaintiff disclosed a pre-existing medical condition as well as a diagnosis of PTSD in a request to take some time off in in February 2025. However, as Defendant claimed that he no longer had enough Paid Time Off to request a short leave, they denied Plaintiff's request for a mere four (4) days off. As the leave was necessitated by his medical condition, Plaintiff was forced to take the the days off despite the denial.

47. Due to Plaintiff taking time off after disclosing a medical condition, Plaintiff received a verbal warning from Defendant.

48. After Plaintiff's medical disclosure and request, Defendant began retaliating and discriminating against Plaintiff.

49. Plaintiff engaged in a qualification period for a promotion between the months of

April to June of 2025. In a retaliatory act, Defendant denied Plaintiff's application despite Plaintiff's performance for the same period being exemplary. Namely, Plaintiff was the number one sales person for employees in his position with respect to internent sales.

50. Additionally, Defendant began to engage in efforts to single Plaintiff out and inconvenience Plaintiff in ways other employees never endured. Plaintiff had time off requests denied, which was not a usual occurrence for other employees of Defendant, and Plaintiff was informed that he, unlike other employees, could not bring personal items into the office.

51. The temporal proximity between Plaintiff's protected request for time off and Plaintiff's disclosure of a medical condition in February 2025 to the differing treatment he experienced later that same year, establishes a clear causal connection.

52. Plaintiffs retained Joseph & Norinsberg LLC to represent him in this litigation and has agreed to pay the firm a reasonable fee for its services.

**FIRST CAUSE OF ACTION**
**(FLSA Collective Action)**

53. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

54. At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of the Defendant within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

55. As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked regular and overtime hours for Defendant for which they were not paid, in violation of the FLSA.

56. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective

Plaintiffs for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due.

57. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for the proper overtime rate when Defendant knew or should have known such was due.

58. As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

**SECOND CAUSE OF ACTION**
**(NJWHL and NJWPL Class Action)**

59. Plaintiff realleges and reavers each and every previous allegation as if fully set forth herein.

60. At all relevant times Plaintiff and the other New Jersey Class members were employees of the Defendant within the meaning of the NJWHL and NJWPL, and were persons covered by and intended to benefit from the provisions of the NJWHL and NJWPL.

61. As alleged herein, Plaintiff and the other Class members regularly worked in excess of 10 hours per day and 40 hours per week, but were not paid all of the wages to which they were entitled under the NJWHL and NJWPL, including regular amd overtime wages.

62. Defendant knew of and/or showed a willful disregard for the provisions of the NJWHL and NJWPL as evidenced by their failure to compensate Plaintiff and the other New Jersey Class Members for the proper overtime rate when Defendant knew or should have known such was due.

63. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other New Jersey Class Members for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due.

64. Defendant also failed to provide Plaintiff and the other Class members with accurate wage statements and wage notices, as required under the NJWHL and NJWPL.

65. Defendant knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other Class members for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage statements.

66. As a direct and proximate result of Defendant's willful disregard of the NJWHL and NJWPL, Plaintiff and the other Class members suffered damages in the form of unpaid regular, minimum-wage and overtime pay. Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of statutory penalties, liquidated damages, interest, attorney's fees, and costs, as provided for under the NJWHL and NJWPL.

**<u>THIRD COUNT</u>**
**VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS**
**(brought on behalf of a Rule 23 Class)**

67. Plaintiff realleges and incorporate all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein

68. At all relevant times, Class Members were employed by Defendant within the meaning of the applicable state wage and hour laws, just as Plaintiff was employed by Defendant

under the meaning of the FLSA.

69. Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of his overtime class claims.

70. Defendant knowingly and willfully violated Plaintiff and Class Members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due a policy of underreporting employees' hours and failing to account for all pay when calculating overtime rates, in violation of the state wage and labor laws outlined above.

71. Defendant knowingly and willfully failed to provide proper wage statements and notices to Class Members, as required under the laws of New York State, California, and Minnesota.

72. Due to Defendant's state law violations, Plaintiff and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

73. In addition to violations of State Labor overtime laws under which Plaintiff brings class (not individual) claims, Defendant violated State provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements. These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or

> exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and anyattorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
>
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

74. The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a). However, Plaintiffs invoke the Florida Minimum Wage Act not only in her individual capacity but to bring class claims on behalf of class members residing in Florida. Thus, Plaintiffs are not personally required to provide Defendant with a pre-suit notice as to each class member. As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

75. The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would

> then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3rd Cir. 2011).

76. Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims. Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) "[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions."); Lisk v. Lumber One Wood Preserving, LLC, 79 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in Shady Grove, does not apply in federal court. Rule 23 controls.").

77. Due to Defendant's state law violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CLASS MEMBERS' CONTRACTS AND/OR DEFENDANT'S UNJUST ENRICHMENT**
**(brought on behalf of a Rule 23 Class)**

78. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein

79. To the extent that the Fair Labor Standards Act and/or State wage laws do not protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), Plaintiff and Class members assert such claims under breach of contract and unjust enrichment.

80. When Plaintiff and Class members entered into employment with Defendant, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed upon hourly rates for all hours worked.

81. Plaintiff and Class members provided services to Defendant as required under their agreements. However, Defendant's failure to compensate all hours of work, including gap-time hours, breached the Plaintiff's and Class members' agreements.

82. As a direct and proximate result of Defendant's failure to act fairly and in good faith, Plaintiff and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

83. Moreover, absent an implied contract, by virtue of Defendant's conduct as alleged herein, and Plaintiff's and Class members' performance, Defendant were unjustly enriched by the Plaintiff's and Class members' conduct and did not compensate Plaintiff and Class members fully.

84. The circumstances are such that it would be inequitable to allow Defendant to retain the excess benefit from Plaintiff and Class members conduct without paying fair value for it.

85. As a direct and proximate result of Defendant's wrongful withholding of funds that should have been paid to Plaintiff and Class members, they have sustained damages in an amount according to proof at trial.

86. Defendant's withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Class members' rights with the intent to cause injury to Plaintiff and Class members. Plaintiff and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
## PLAINTIFF'S INDIVIDUAL DISCRIMINATION AND RETALIATION CLAIMS PURSUANT NEW JERSEY LAW AGAINST DISCRIMINATION ("NJLAD") , N. J. Stat. Ann.§ 10:5-1 et seq.

87. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

88. Plaintiff engaged in protected activity under the NJLAD by requesting reasonable accommodation and/or leave for his disabilities and complaining to HR about discrimination.

89. Defendants retaliated against Plaintiff for engaging in protected activity by manufacturing performance concerns and subjecting him to increased scrutiny.

90. Defendants interfered with Plaintiff's rights by requiring him to work through his requested disability leave, by retaliating against him, by failing to designate his mental health and medical disability leave as protected by NJLAD, and retaliating against her for seeking accommodation and temporary leave.

91. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered economic losses, and continues to suffer such losses,

for which she is entitled to an award of monetary damages.

92. As a direct and proximate result of Defendants' conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS

*(Interference and Retaliation in Violation of the FMLA)*

93. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

94. Plaintiff was an eligible employee under the FMLA, having been employed by Defendant for at least 12 months.

95. Plaintiff sought leave in February 2025 due to his medical condition.

96. Whether Plaintiff's request for leave was protected under the FMLA or not is immaterial to the retaliation claim as an employee engages in a protected activity when she complains of an employment practice that he **reasonably believes** violates the law. *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). Accordingly, to satisfy the first element of a *prima facie* case of retaliation, a plaintiff must show that she engaged in "an activity taken in good faith to protest or oppose statutorily prohibited discrimination." *Sletten v. LiquidHub, Inc.*, 2014 U.S. Dist. LEXIS 94697, 2014 WL 3388866, at *1 (S.D.N.Y. July 11, 2014) (quoting *Morgan v. N.Y. State Att'y Gen.'s Office*, 2013 U.S. Dist. LEXIS 17458, 2013 WL 491525, at *9 (S.D.N.Y. Feb. 8, 2013)); *Amley v. Sumitomo Mitsui Banking Corp.*, 2021 U.S. Dist. LEXIS 184562, at *50

(S.D.N.Y. Sep. 27, 2021).

98. Defendant is an employer covered by the FMLA, in that Defendant employs 50 or more employees within a 75-mile radius of Plaintiff's worksite.

99. Plaintiff suffered from serious health conditions, including mental health distress, which required continuing treatment by healthcare providers.

100. Plaintiff provided notice to Defendants of his need for FMLA-qualifying leave by informing Defendants of his medical conditions and need for leave.

101. Defendants interfered with Plaintiff's FMLA rights by failing to designate his leave as FMLA protected and failing to provide him with required notices regarding her FMLA rights.

102. Defendants retaliated by giving warnings to Plaintiff and by denying Plaintiff promotion.

103. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer economic loss, emotional distress, and other damages for which she seeks an award of monetary damages and other relief.

104. Defendants' unlawful actions display willfulness and malice, entitling Plaintiff to an award of liquidated damages under the FMLA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and state wage laws;

b. An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due under the FLSA and state wage laws;

d. An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and state wage laws;

e. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

f. An award of all owed benefits owed pursuant to state wage laws;

g. Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

h. Designation of this action as a class action pursuant to F.R.C.P. 23;

i. Designation of Plaintiff as Representatives of the Class;

j. Statutory penalties and liquidated damages pursuant to the NJLAD and the FMLA;

k. Lost wages, compensatory damages, and punitive damages pursuant to the NJLAD and the FMLA to be determined at trial;

l. Pre- and post-judgment interest; and

m. Plaintiff's costs and reasonable attorney's fees;

n. Together with such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

## NY BCL §630 NOTICE AND DEMAND

Plaintiff hereby gives this notice, in writing, to each shareholder of Defendant, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiff.

Plaintiff also demands an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: September 16, 2025
New York, New York

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: ______________________________

Diego O. Barros, Esq.
Robert Kansao, Esq.
*Attorneys for Plaintiff and the Putative Class*
825 Third Ave., Suite 2100
New York, New York 10022
(212) 227-5700
diego@employeejustice.com
robert@employeejustice.com